**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHUBB INSURANCE COMPANY OF
EUROPE S.A., a foreign
corporation, on behalf of itself and
all other underwriters subscribing
to policy number CJ7317,
                              *Plaintiff,*

               v.

MENLO WORLDWIDE FORWARDING,
INC., a corporation,
                              *Defendant,*

               v.

UPS SUPPLY CHAIN SOLUTIONS,
INC., a corporation f/k/a MENLO
WORLDWIDE FORWARDING, INC.,
       *Defendant-third-party-plaintiff-*
                              *Appellant,*

               v.

QANTAS AIRWAYS LIMITED,
       *Third-party-defendant-Appellee.*

No. 08-55281

D.C. No.
CV-06-07267-DSF

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
September 2, 2010—Pasadena, California

Filed February 10, 2011

Before: Diarmuid F. O'Scannlain, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge O'Scannlain

## COUNSEL

Michael S. McDaniel, Countyman & McDaniel, Los Angeles, California, argued the cause for the defendant-third-party-plaintiff-appellant, and filed the briefs. Byron E. Countyman,

Geoffrey W. Gill, and Christoph M. Wahner, Countyman & McDaniel, Los Angeles, California, were also on the briefs.

Scott D. Cunningham, Condon & Forsyth LLP, Los Angeles, California, argued the cause for the third-party-defendant-appellee, and filed the brief. Roderick D. Margo and Julia K. Doyle, Condon & Forsyth LLP, Los Angeles, California, were also on the brief.

Brandon Fried and Richard Fisher, Airforwarders Association, Washington DC, filed a brief on behalf of Amicus Curiae Airforwarders Association, in support of the defendant-third-party-plaintiff-appellant.

Dr. Eduardo T. Cosentino, Langbehn & Cosentino, Buenos Aires, Argentina, filed a brief on his own behalf, in support of the defendant-third-party-plaintiff-appellant.

John D. Dillow, Kathleen M. O'Sullivan, and Mack H. Shultz, Perkins Coie, LLP, Seattle, Washington, filed a brief on behalf of Amicus Curiae Aerospace Industries Association of America, Inc.

Robert A. Rees, Rees Law Firm, PC, Los Angeles, California, filed a brief on behalf of Amicus Curiae Paul Stephen Dempsey, in support of the third-party-defendant-appellee.

---

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether the Montreal Convention's two-year statute of limitations on "the right to damages" in connection with international air cargo shipments applies to suits seeking indemnification and contribution.

# I

On November 14, 2004, Air New Zealand Engineering, Ltd. contracted with Menlo Worldwide Forwarding, Inc. ("Menlo") to ship a turbine aircraft engine from New Zealand to the United States. Menlo, in turn, contracted with Qantas Airways, Ltd. ("Qantas") to perform the actual carriage of the engine to its destination. When the engine arrived in Los Angeles on or about November 19, however, it was not in the same condition as when it had left New Zealand; it had been damaged sometime during transportation. The engine's owner subsequently filed a claim with its insurer, Chubb Insurance Co. of Europe, S.A. ("Chubb"), for the resulting loss. Chubb paid the owner $119,666.62.

On November 14, 2006, Chubb brought this suit in federal district court against Menlo's successor-in-interest, UPS Supply Chain Solutions, Inc. ("UPS"), seeking to recover the money that it had paid to the engine's owner. Chubb argued that UPS was liable for the damage to the engine under the Montreal Convention, which governs international air carriage of passengers, baggage, and cargo.[1] The parties eventually reached a settlement under which UPS agreed to pay Chubb $80,000.

On September 18, 2007, UPS filed a third-party complaint against Qantas, seeking indemnification and contribution for sums UPS had paid Chubb. UPS claimed that it was "in no way responsible" for the damages alleged in Chubb's action; rather, UPS maintained, the engine was damaged as a "direct and proximate result" of "negligent or other actionable conduct" by Qantas.

The district court dismissed UPS's third-party complaint,

---

[1]*See* Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 (2000) ("Montreal Convention").

reasoning that under Article 35 of the Montreal Convention,[2] UPS's claims against Qantas were timely only if brought within two years of the damaged engine's arrival in Los Angeles. Because the claims were not brought within that period, the court held that they were barred and dismissed UPS's third-party complaint with prejudice. UPS timely appealed.

## II

## A

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellin v. Texas*, 552 U.S. 491, 506 (2008). And, where the text of a treaty is clear, a court has "no power to insert an amendment" based on consideration of other sources. *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134 (1989).

[1] The Montreal Convention governs the liability of air carriers in the "international carriage of persons, baggage or cargo." Montreal Convention, *supra*, art. 1. Article 35 of the Montreal Convention states: "The right to damages shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped." By its terms, Article 35 extinguishes only a single right: the "right to damages." Thus, unless UPS's claims against Qantas assert such a right, they are not affected by Article 35.

The "right to damages" is not defined in Article 35, but its contours become clear when the Convention is read as a whole. Articles 17 to 19 of the Convention set forth the circumstances in which a carrier is "liable for damage." A car-

---

[2] Both parties agree that this case is governed by the Montreal Convention.

rier is liable, under Article 17(1), for "damage sustained in case of death or bodily injury of a passenger"; under Article 17(2), for "damage sustained in case of destruction or loss of, or of damage to, checked baggage"; under Article 18(1), for "damage sustained in the event of the destruction or loss of, or damage to, cargo"; and under Article 19, for "damage occasioned by delay in the carriage by air of passengers, baggage or cargo."

Other Articles establish limits on a carrier's liability for damage, providing, for example, that compensation for loss of cargo cannot exceed a specified amount per kilogram. *See id.* art. 22(3). Still other Articles impose conditions on the filing of an action for damages against a carrier. Article 31, for instance, requires that in the case of damage to baggage or cargo, "the person entitled to delivery must complain to the carrier" within a specified time period "after the discovery of the damage."

**[2]** Construed against this backdrop, the "right to damages" referenced in Article 35 is the cause of action under the Montreal Convention by which a passenger or consignor may hold a carrier liable for damage sustained to passengers, baggage, or cargo. It is plain that Chubb's action against UPS asserted such a right. But it is equally plain that UPS's third-party action against Qantas does not. UPS does not seek compensation for damage sustained to the engine; rather, UPS, as a contracting carrier, seeks *indemnification* (and *contribution*) from Qantas, as an actual carrier, for such compensation it has already paid Chubb.

**[3]** While the Montreal Convention does not create a cause of action for indemnification or contribution among carriers, it does not preclude such actions as may be available under local law. *See In re Air Crash at Lexington, KY*, No. 5:07-CV-316, 2007 WL 2915187 (E.D. Ky. Oct. 5, 2007) (holding that the Montreal Convention does not preempt a local law cause of action for apportionment among joint tortfeasors); *cf.*

*Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776, 785-87 (7th Cir. 2008) (holding the same for the Warsaw Convention). The Montreal Convention refers to these local law causes of action for indemnification, contribution, apportionment, or set-off, not as a "right to damages," but as a "right of recourse." This is the right UPS seeks to vindicate in its action against Qantas.

**[4]** Article 37, entitled "Right of recourse against third parties," provides: "Nothing in this Convention shall prejudice the question whether a person liable for damage in accordance with its provisions has a right of recourse against any other person." If Article 35 were construed to extinguish a carrier's "right of recourse" at the expiration of the specified two-year period, then the Convention would do precisely what Article 37 says it does not: "prejudice the question whether a person liable for damage . . . has a right of recourse against any other person." To avoid an explicit conflict between Articles 35 and 37, the "right to damages" extinguished by Article 35 must be understood *not* to include a carrier's "right of recourse" against another carrier. This reading is consistent with other portions of the Montreal Convention which use "right of recourse" to refer to suits between carriers. *See* Montreal Convention, *supra*, art. 48 (referring to "the rights and obligations of the carriers between themselves, including any right of recourse or indemnification"). In other words, because an action between carriers for indemnification or contribution is premised on the "right of recourse," rather than the "right to damages," Article 35's time bar does not apply. Instead, the timing of such an action is governed by local law.

Article 45 supports this conclusion. It provides that "an action for damages may be brought . . . against [the actual] carrier or the contracting carrier, or against both together or separately. If the action is brought against only one of those carriers, that carrier shall have the right to require the other carrier to be joined in the proceedings, *the procedure and effects being governed by the law of the court seized of the*

*case.*" *Id.* art. 45 (emphasis added). Thus, where an action is brought against one carrier within Article 35's two-year period, "that carrier shall have the right to require" other carriers "to be joined in the proceedings," and that third-party action will be subject to "the procedures and effects" of local law, not the strictures of Article 35.[3]

Finally, it is worth noting that Article 35 only mandates that "the right to damages shall be extinguished if *an action* is not brought within a period of two years." *Id.* art. 35 (emphasis added). It does not require that "all actions" relating to a particular event must be brought within two years. Thus, if a party has timely brought an action for damages against an actual carrier or a contracting carrier, nothing in Article 35 prevents the defendant carrier from exercising its Article 45 right to "require the other carrier to be joined in the proceedings," subject to the "procedure and effects" of local law. *See id.* art. 45.

**[5]** Accordingly, the plain language of the Montreal Convention makes clear that actions for indemnification and contribution are not subject to Article 35's two-year statute of limitations.

---

[3]Where, as here, the "court seized of the case" is a federal district court, the Federal Rules of Civil Procedure furnish the applicable law. And where, as here, the contracting carrier seeks to bring in the actual carrier as a third party, the applicable rule is Federal Rule of Civil Procedure 14, which provides:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a)(1). Qantas does not dispute that UPS's filing of its third-party complaint complied with Rule 14.

B

Qantas argues that, because Article 35 of the Montreal Convention is substantially identical to Article 29 of the Warsaw Convention, which it superseded,[4] we must follow pre-Montreal Convention precedent interpreting Article 29. And, to be sure, some of those cases did hold that Article 29 of the Warsaw Convention applied to third party actions for indemnity and contribution. *See Motorola, Inc. v. MSAS Cargo Int'l, Inc.*, 42 F. Supp. 2d 952, 956 (N.D. Cal. 1998); *Data Gen. Corp. v. Air Express Int'l Co.*, 676 F. Supp. 538, 540-41 (S.D.N.Y. 1988); *Split End Ltd. v. Dimerco Express (Phils)* Inc., No. 85 Civ. 1506, 1986 WL 2199, at *6 (S.D.N.Y. Feb. 11, 1986); *L.B. Smith, Inc. v. Circle Air Freight Corp.*, 488 N.Y.S.2d 547, 549-50 (Sup. Ct. 1985).

We have considered these cases, but find their textual analysis unpersuasive. Instead, we are guided by the Ontario Supreme Court of Canada's ruling that Article 29 of the Warsaw Convention does *not* apply to suits brought by one carrier against another. *See Connaught Laboratories Ltd. v. Air Canada* (1978), 23 O.R. 2d 176 (Can. Ont. Sup. Ct. J.).[5] "Such claims," the court held, were not "intended to be included, within the purview of The Warsaw Convention," which, "deals with the claims of passengers, consignors and consignees, and the liability of carriers therefor," not "with the claims of carriers *inter se*." *Id.* ¶ 26.

Still, Qantas insists that the decisions it cites, despite having been issued by trial courts, are binding on this Court. This

---

[4] *See* Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11, art. 29 ("Warsaw Convention").

[5] Warsaw Convention precedent includes the judicial opinions of our sister signatories. *Cf. Air France v. Saks*, 470 U.S. 392, 404 (1985) (deeming "the opinions of our sister signatories to be entitled to considerable weight" on matters of treaty interpretation (internal quotations marks omitted)).

is so, Qantas maintains, because the Montreal Convention's drafting history supposedly makes clear that then-existing Warsaw precedent was not to be overruled. We are not allowed to consider the treaty's drafting history, however, because its text is unambiguous. *See Chan*, 490 U.S. at 134 (asserting that, when interpreting unambiguous treaties, courts must "be governed by the text—solemnly adopted by the governments of many separate nations—whatever conclusions might be drawn from the [treaty's] intricate drafting history").[6]

## III

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND the case for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

---

[6]After oral argument, we invited amicus briefs addressing, inter alia, how precedent interpreting Article 29 of the Warsaw Convention should affect our interpretation of Article 35 of the Montreal Convention. We would like to thank all the amici who responded to our request.