**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SUSHEELA NARAYANAN, individually and as Successor-in-interest to Papanasam Narayanan, deceased, on behalf of the Heirs and Estate of Papanasam Narayanan; TARA CASTRO NARAYANAN; RANJIT NARAYANAN, *Plaintiffs-Appellants*, | No. 11-55870 D.C. No. 2:11-cv-02175-JFW-CW OPINION |
| v. | |
| BRITISH AIRWAYS, *Defendant-Appellee*. | |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
February 4, 2013—Pasadena, California

Filed March 19, 2014

Before: Harry Pregerson, William A. Fletcher, and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nguyen;
Dissent by Judge Pregerson

## SUMMARY[*]

### Montreal Convention

The panel affirmed the district court's dismissal as untimely of an action for damages under the Montreal Convention.

The complaint alleged that the denial of oxygen aboard an international flight hastened a passenger's death. The panel held that the two-year limitations period set forth in Article 35(1) of the Convention applied to the complaint, which was filed more than two years after the flight but within two years of the passenger's death. The panel held that under its plain language, Article 35(1) applies irrespective of when a claim actually accrues.

Dissenting, Judge Pregerson wrote that the Montreal Convention's rigid statute of limitations protects international airline carriers at the expense of their passengers.

### COUNSEL

Gerald C. Sterns (argued), Sterns & Walker, Oakland, California; Fred M. Isaacs, Lake Oswego, Oregon, for Plaintiffs-Appellants.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Scott D. Cunningham (argued) and Natasha N. Mikha, Condon & Forsyth LLP, Los Angeles, California, for Defendant-Appellee.

## OPINION

NGUYEN, Circuit Judge:

Panansam Narayanan ("Narayanan") suffered from an advanced-stage lung disease. While aboard a British Airways international flight, he was allegedly denied supplemental oxygen. Narayanan died six months after the plane landed. Plaintiffs, Narayanan's heirs and estate, filed this lawsuit under the Montreal Convention (the "Convention"), alleging that the denial of oxygen hastened Narayanan's death. The action was filed on March 7, 2011—more than two years from the date of the flight's arrival, but within two years of Narayanan's death.

The district court dismissed the complaint as untimely because Article 35(1) of the Convention requires a claim for damages under the Convention to be filed within two years of the date upon which the aircraft arrived, or ought to have arrived, at its destination. In an issue of first impression in our circuit, we must decide whether Article 35(1)'s strictures apply equally to a claim which had not yet accrued at the time that the Convention's two-year limitations period was triggered. We hold that, under the plain language of the Convention, the answer is yes. Therefore, Plaintiffs' claim was untimely.

## Background

On December 26, 2008, Narayanan boarded a British Airways flight from Los Angeles, California, to Bangalore, India, with an intermediate stop in London, England. Narayanan, who suffered from an advanced-stage, terminal lung disease, required supplemental oxygen during the flight.[1] Having been advised of his condition prior to boarding, British Airways assured Narayanan that he would have access to his supplemental oxygen. However, during the flight from Los Angeles to London, British Airways denied Narayanan access to this oxygen. Upon arriving in London, Narayanan sought medical attention and was cleared to continue onto Bangalore. He received further medical treatment in India, as well as in the United States following his return on January 16, 2009. However, his health continued to deteriorate and, on June 11, 2009, Narayanan died.

On March 7, 2011, Narayanan's widow and two adult children filed a claim against British Airways under Article 17(1) of the Convention, alleging that the denial of supplemental oxygen on his flight to London hastened Narayanan's death. They sought general, special, and survival damages for this claim.

British Airways removed the case to federal court and moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the complaint was time-barred under

---

[1] This appeal arises from a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, all factual allegations set forth in the complaint are taken as true and construed in the light most favorable to Plaintiffs. *See Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

the two-year limitation period established by Article 35(1) of the Convention because the flight at issue arrived on December 26, 2008, and the complaint was not filed until March 7, 2011.  The district court agreed and dismissed the complaint with prejudice.  This appeal followed.

## Standard of Review

We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6), accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party.  *Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010).

## Discussion

### A

The Convention, which governs "all international carriage of persons, baggage or cargo performed by aircraft for reward," provides the exclusive remedy for international passengers seeking damages against airline carriers. Convention for the Unification of Certain Rules for International Carriage by Air art. 1(1), May 28, 1999, S. Treaty Doc. No. 106-45 (hereinafter "Montreal Convention").[2]  In interpreting this Convention, we begin by

---

[2] The Montreal Convention is the successor to the Warsaw Convention of 1929.  *See* Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11 (hereinafter "Warsaw Convention").    The Montreal Convention "was the product of a United Nations effort to reform the Warsaw Convention so as to harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists."  *Sompo Japan Ins., Inc. v. Nippon Cargo*

looking to its text. *Medellin v. Texas*, 552 U.S. 491, 506 (2008).

Article 17(1) of the Convention provides that a carrier is "liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention art. 17(1). We have defined an "accident" for purposes of Article 17 as "an unexpected or unusual event or happening that is external to the passenger." *Phifer*, 652 F.3d at 1223 (quoting *Air France v. Saks*, 470 U.S. 392, 405 (1985)). The parties do not dispute that British Airways' alleged failure to provide Narayanan supplemental oxygen was an "accident" within the meaning of Article 17.

Article 29 sets forth limits on such claims, however, providing that:

> any action for damages, however founded, whether under this Convention or in contract

---

*Airlines Co.*, 522 F.3d 776, 780 (7th Cir. 2008) (internal quotation marks and citation omitted).

Although designed to replace the Warsaw Convention, the Montreal Convention incorporates many of its substantive provisions. *See* Montreal Convention art. 55; *see also Ehrlich v. Am. Airlines*, 360 F.3d 366, 371–73 (2d Cir. 2004). Accordingly, in interpreting the Montreal Convention, courts have routinely relied upon Warsaw Convention precedent where the equivalent provision in the Montreal Convention is substantively the same. *See, e.g.*, *Phifer v. Icelandair*, 652 F.3d 1222, 1224 n.1 (9th Cir. 2011); *see also Baah v. Virgin Atl. Airways Ltd.*, 473 F. Supp. 2d 591, 595–96 (S.D.N.Y. 2007) (citing legislative and executive statements indicative of intent to preserve Warsaw Convention precedent).

> or in tort or otherwise, can *only be brought
> subject to the conditions and such limits of
> liability* as are set out in this Convention . . . .

Montreal Convention art. 29 (emphasis added).

At issue here is one such limit on liability, set forth in Article 35(1).  This provision states as follows:

> The right to damages shall be extinguished if
> an action is not brought within *a period of two
> years*, reckoned from the *date of arrival at the
> destination*, or from the date on which the
> aircraft ought to have arrived, or from the date
> on which the carriage stopped.

Montreal Convention art. 35(1) (emphasis added).[3]  Taken together, Articles 29 and 35(1) require that a claim for damages under the Convention must be filed within two years of the date upon which the aircraft arrived, or ought to have arrived, at its destination.  *Id.*

**B**

Applying these provisions here, it is clear that Plaintiffs' complaint was untimely filed.  Plaintiffs brought an action pursuant to Article 17(1), alleging that British Airways' refusal to give Narayanan supplemental oxygen during an

---

[3] *See also* Warsaw Convention art. 29(1) ("The right to damages shall be extinguished if an action is not brought within two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped.").

international flight hastened his death. Their claim arises under the Convention and is therefore subject to Article 35(1). *See* Montreal Convention art. 29. This, in turn, means that Plaintiffs' right to damages for their wrongful death claim would be "extinguished if [their] action [was] not brought within a period of two years, reckoned from the date of arrival at the destination." Montreal Convention art. 35(1); *see also Dickson v. Am. Airlines, Inc.*, 685 F. Supp. 2d 623, 627 (N.D. Tex. 2010). Here, the flight at issue arrived on December 26, 2008; Plaintiffs thus had until December 26, 2010, to file a claim. However, they did not file their complaint until March 7, 2011—approximately three months too late.

This analysis seems straightforward enough. However, a factual wrinkle persists: even though the "accident" giving rise to liability under the Convention occurred on December 26, 2008, Narayanan did not die for another six months. As a result, the limitations period on Plaintiffs' wrongful death claim began running six months before it even accrued. The question thus becomes whether Article 35(1) applies irrespective of when a claim actually accrues, or whether local law governs the timeliness of any claims which were not in existence when the aircraft arrived at its destination. In answering this question, we write on a virtually blank slate; we are aware of only one cursory decision (by an Illinois district court fifty years ago) presenting similar facts. *See Bapes v. Trans World Airlines, Inc.*, 209 F. Supp. 380, 381 (N.D. Ill. 1962) (summarily holding that the plaintiff's wrongful death claim was time-barred under the Warsaw Convention where her complaint was filed within two years of the passenger's death, but more than two years from the date the aircraft arrived at its destination).

Plaintiffs contend that the Convention's two-year limitations period should have been triggered on the day of Narayanan's death, when their wrongful death claim accrued under California law.[4] While this argument may have some appeal, the plain text of the Convention, as well as its drafting history and relevant caselaw, convince us that we must squarely apply Article 35(1), under which Plaintiffs' claim is time-barred.

Turning again to the text, the plain language of Article 35(1) leaves no room for flexibility as to the commencement of the limitations period. Rather, as noted above, the Convention designates three specific triggering events: (1) the date of arrival at the destination; (2) the date on which the aircraft ought to have arrived; and (3) the date on which the carriage stopped. Montreal Convention art. 35(1). These are the terms that the Convention's drafters settled on—and that 103 separate signatory nations agreed to—in their efforts to "accommodate or balance the interests of passengers seeking recovery for personal injuries, and the interests of air carriers seeking to limit potential liability." *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 170 (1999) (discussing the Warsaw Convention). By urging us to evaluate the timeliness of their claim under the Convention based upon the date upon which it accrued under California law, Plaintiffs effectively ask us to write an implied fourth trigger into the Convention's terms. This we cannot do. *See Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134 (1989).

---

[4] We note that Plaintiffs still had a year-and-a-half after Narayanan's death in which to file their complaint. In this sense, Plaintiffs' case is not nearly as sympathetic as the plaintiff in *Bapes*, whose wrongful death claim did not accrue until after the two-year window had already closed. 209 F. Supp. at 380–81.

Moreover, we are not persuaded by Plaintiffs' arguments as to why Article 35(1) does not apply to their claim. Plaintiffs first pick apart Article 35(1)'s initial clause, which states that "[t]he right to damages shall be extinguished if an action is not brought within a period of two years . . . ." Montreal Convention art. 35(1). Specifically, they contend that the drafters' use of articles such as "the" and "an" means that Article 35 can only refer to a right or cause of action that was already in existence at the time of arrival—otherwise the drafters would have said "any" claim for damages.

This argument, however, rests on faulty logic. Article 35's reference to "an" action simply refers to a putative claim for damages brought under the Convention; "the" right to damages refers to the remedy sought in connection with this action. Any lingering confusion is further alleviated by Article 29, which confirms that "*any* action for damages . . . can only be brought subject to the conditions and such limits of liability as are set out in th[is] [Montreal] Convention . . . ." Montreal Convention art. 29 (emphasis added). This means, in other words, that *any* action seeking damages—regardless of when the cause of action accrued—is subject to, *inter alia*, the requirements of Article 35.[5]

---

[5] Plaintiffs' argument appears to be premised on our observation in *Chubb Insurance Co. of Europe S.A. v. Menlo Worldwide Forwarding, Inc*. that Article 35 "does not require that 'all actions' relating to a particular event must be brought within two years." 634 F.3d 1023, 1027 (9th Cir. 2011). *Chubb*, however, is inapposite here. In *Chubb,* we drew a distinction between "an" action and "all actions" as support for our holding that *third-party claims for indemnity and contribution* were beyond the reach of Article 35(1), which applies only to claims for damages. *Id*. at 1027–28. Here, because Plaintiffs brought a claim for damages—not indemnity or contribution—their reliance on *Chubb* is misplaced.

Plaintiffs also rely on *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217 (1996), for the proposition that "where the Convention is silent or ambiguous on a key point . . . a 'pass through' to local law is permissible, if not mandatory." Under *Zicherman*, they argue, a "pass-through" to California law is appropriate because the Convention fails to specify what happens if a claimant's cause of action had not accrued at the time of the flight's arrival.

The factual premise supporting this argument is incorrect. The Convention is *not* silent as to when the two-year limitations period begins to run on claims for damages; Article 35(1) provides three specific triggering events. True, the Convention does not expressly contemplate the possibility that some causes of actions may not accrue until weeks, months, or even years after the aircraft arrived at its destination. But this does not necessarily place such claims beyond the reach of Article 35(1). The more natural interpretation of Article 35 is that it was intended to operate without reference to when a particular claim actually accrued.

*Zicherman* is inapposite for another reason as well. In *Zicherman*, the Supreme Court considered whether the mother and sister of a deceased passenger could claim loss-of-society damages. 516 U.S. at 219–21. It reasoned that because the Warsaw Convention did not resolve the issues of "who may recover, and what compensatory damages they may receive," *id*. at 227, absent special legislation, Articles 17 and 24(2) of the Warsaw Convention "provide nothing more than a pass-through," and authorize courts to apply the domestic law that would govern in the absence of the Warsaw Convention. *Id*. at 229.

We are unaware of any decision applying *Zicherman* in the context of Article 35(1). To the contrary, numerous courts have expressly limited it to issues pertaining to compensatory damages. *See, e.g.*, *In re Air Crash at Taipei, Taiwan, on October 31, 2000*, 219 F. Supp. 2d 1069, 1071 (C.D. Cal. 2002) ("When read in its entirety, the *Zicherman* opinion clearly addresses the sole question of whether the substantive rule for awarding compensatory damages should be taken from French law—the language in which the treaty was written and from which the meaning of the term 'damages' ('dommage' in the French) must be determined—or through application of local law, including the forum's choice of law principles."); *In re Aircrash Disaster Near Roselawn, Ind., on Oct. 31, 1994*, 960 F. Supp. 150, 152 (N.D. Ill. 1997) ("[T]here are ample indications in the [*Zicherman*] decision that the Court was addressing only the various types of compensatory damages that may be available."); *cf. In re Air Crash Off Point Mugu, Cal., on Jan. 30, 2000*, 145 F. Supp. 2d 1156, 1162 (N.D. Cal. 2001) ("The court is of the opinion that the Supreme Court's 'pass through' language was discussing only those claims that were not otherwise barred by the Warsaw Convention, and that the Court did not mean to overrule the prohibitions established by the Convention.").

Plaintiffs also assert that applying California law is consistent with Article 35(2) of the Convention. This provision states:

> The method of calculating [the two-year] period [set forth in Article 35(1)] shall be determined by the law of the court seized of the case.

Montreal Convention art. 35(2).[6]  However, Article 35(2) has not been understood as offering claimants a state-law-based alternative to the strictures of Article 35(1).  Rather, as the Second Circuit has explained, this provision "merely . . . invoke[s] the power of the forum court to determine whether the plaintiff accomplished the filing within the limitation period, a question that may involve . . . the proper party or agent for receipt of process, and the means of service—in other words, matters bearing on when an action has been 'brought.'"  *Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138, 144 (2d Cir. 1998) (relying on drafting history in concluding that "the *only matter* to be referred to the forum court by subsection 2 of Article 29 [of the Warsaw Convention] was 'the determination of whether the plaintiff had taken the necessary measures within the two-year period to invoke that particular court's jurisdiction over the action'" (emphasis added)); *see also, e.g.*, *Pennington v. British Airways*, 275 F. Supp. 2d 601, 604–06 (E.D. Pa. 2003) (holding that Warsaw Convention Article 29(2) permitted application of a Pennsylvania procedural rule providing that whenever last day of limitations period fell on Saturday or Sunday, that day would be omitted from computation of the limitations period).  Accordingly, we are not persuaded that Article 35(2) allows for an end-run around Article 35(1).

---

[6] The equivalent provision in the Warsaw Convention, Article 29(2), similarly provides:

> The method of calculating the period of limitation shall be determined by the law of the Court seised of the case.

Warsaw Convention art. 29(2).

## C

Because we find the language of Article 35 unambiguous, our analysis need proceed no further. Nevertheless, we note that the drafting history of the Convention lends support to our conclusion that Plaintiffs' complaint is subject to Article 35(1). *See Medellin*, 552 U.S. at 507 ("Because a treaty ratified by the United States is 'an agreement among sovereign powers,' we have also considered as 'aids to its interpretation' the negotiation and drafting history of the treaty as well as 'the postratification understanding' of signatory nations." (citations omitted)). To start, Plaintiffs' position that California law governs the timeliness of their claim is at odds with the Convention's "cardinal purpose" of "achiev[ing] uniformity of rules governing claims arising from international air transportation." *El Al Israel Airlines*, 525 U.S. at 169 (internal quotation marks and citation omitted) (discussing the Warsaw Convention). As the Supreme Court reasoned in *El Al Israel Airlines*, "[g]iven the Convention's comprehensive scheme of liability rules and its textual emphasis on uniformity, we would be hard put to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations." *Id.* By this same logic, we are hard pressed to conclude that the drafters intended to allow the date upon which a claim accrued under the laws of the forum state to act as an additional trigger for the Montreal Convention's two-year limitations period. Injecting such uncertainty into the rules governing carriers' liability would disrupt the balance that the Montreal Convention's drafters and signatories struck.

The drafting history of the Warsaw Convention also reveals that the drafters intended Article 29 to operate as a

statute of repose, which, "like a jurisdictional prerequisite, extinguishes a cause of action after a fixed period of time . . . *regardless of when the cause of action accrued.*" *Albillo-De Leon v. Gonzales*, 410 F.3d 1090, 1097 n.5 (9th Cir. 2005) (internal quotation marks and citation omitted) (emphasis added). The drafters considered—and rejected—a proposal that would have allowed the limitations period to be tolled in accordance with the law of the forum court. *See* R.C. Horner and D. Legrez, Minutes of the Second International Conference on Private Aeronautical Law, 110–13 (1975); *see also Fishman*, 132 F.3d at 144 (observing that "[a]lmost every court that has reviewed the drafting minutes of the [Warsaw] Convention . . . has rejected the contention that Article 29(2) incorporates the tolling provisions otherwise applicable in [a] forum [state]" (citations omitted)). Instead, the Warsaw Convention's drafters adopted a "very simple" proposal advanced by the Italian delegation: "if two years after the accident no action has been brought, all actions are extinguished." *Laroche v. Spirit of Adventure (UK) Ltd.*, 2009 P.I.Q.R P12, P223.[7] As one British court observed,

> it is clear that the signatories to the Warsaw Convention intended to adopt the Italian proposal that, in the interests of certainty, at the expiry of the two year period, all claims under the Convention would be "extinguished" . . . . This is a powerful indicator that the words of art. 29(1) mean what they say and that the two year period is

---

[7] Montreal Convention precedent "includes the judicial opinions of our sister signatories." *Chubb*, 634 F.3d at 1028 n.5 (citing *Saks*, 470 U.S. at 404) (deeming "the opinions of our sister signatories to be entitled to considerable weight" in interpreting treaties).

> not subject to suspension, interruption or extension in any circumstances.

*Id.* at P223–24; *accord Kahn v. Trans World Airlines, Inc.*, 443 N.Y.S.2d 79, 87 (App. Div. 1981) ("[I]t is abundantly clear that the delegates to the Warsaw Convention expressly desired to remove those actions governed by the Convention from the uncertainty which would attach were they to be subjected to the various tolling provisions of the laws of the member states, and that the two-year time limitation specified in article 29 was intended to be absolute—barring any action which had not been commenced within the two-year period.").

Consistent with this history, the prevailing view among courts across jurisdictions is that the Montreal Convention's limitations period operates as a condition precedent to suit and, as such, is not subject to equitable tolling. *See Duay v. Continental Airlines, Inc.*, No. H-10-cv-1454, 2010 WL 5342824, at *6 (S.D. Tex. 2010) (noting the "overwhelming weight of authority against tolling the Montreal Convention's two-year limitations period"); *Dickson*, 685 F. Supp. 2d at 627 ("[The] language [of the Montreal Convention] leaves no room for the application of a tolling theory, class action or otherwise, designed to overcome the two-year condition precedent."); *Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151, 1154 (8th Cir. 1999); *Fishman*, 132 F.3d at 144. *But see Flanagan v. McDonnell Douglas Corp.*, 428 F. Supp. 770, 776 (C.D. Cal. 1977).

### Conclusion

It is axiomatic that where the text of a treaty is clear, courts "have no power to insert an amendment." *Chan*, 490 U.S. at 134. As Justice Story once put it:

> [T]o alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial, would be on our part an usurpation of power, and not an exercise of judicial functions. . . . [H]aving found [the intention of the parties], our duty is to follow it as far as it goes, and to stop where that stops—whatever may be the imperfections or difficulties which it leaves behind.

*Id.* at 135 (quoting The Amiable Isabella, 6 Wheat. 1, 71, 5 L.Ed. 191 (1821)) (first alteration in original) (internal quotation marks omitted).

Article 35(1) is clear: a claim for damages based on an injury incurred aboard an international flight must be filed within two years of the date upon which the aircraft arrived at its destination. Plaintiffs' wrongful death claim was not timely filed. We therefore hold that the district court correctly dismissed Plaintiffs' complaint without leave to amend.

**AFFIRMED.**

PREGERSON, Circuit Judge, dissenting:

I dissent. The rationale behind the Montreal Convention's uncompromising two-year statute of limitations (and its $75,000 cap on damage awards) is to protect international airline carriers to the detriment of passengers who suffer injuries caused by airline personnel.

The "primary purpose" of the original Warsaw Convention of 1929 was to "limit[] the liability of air carriers in order to foster the growth of the fledgling commercial aviation industry." *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 546 (1991) (citations omitted). The Warsaw Convention was written when the airline industry was in its vulnerable infancy, and when air travel was considered risky.

The Montreal Convention, however, was adopted in 1999, after international air travel became a multi-billion dollar industry, and the risks of flying had decreased exponentially. In fact, Mr. Narayanan's injury was not among the dangers typically associated with air travel (such as mechanical failures and pilot error), but was due solely to the negligence of British Airways's employees. Yet the Montreal Convention, by retaining the Warsaw Convention's rigid statute of limitations, continues to protect international airline carriers at the expense of its passengers, and bars Mr. Narayanan's family from holding British Airways accountable for its misconduct.

Because of the unfair and unconscionable result in this case and perhaps others, I hope that the Montreal Convention will be revisited and revised to protect families like the Narayanans.