NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 8 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JEREMIAH THEDE, | No. 18-15903 |
| Plaintiff-Appellant, | D.C. No. 4:17-cv-03528-PJH |
| v. | |
| UNITED AIRLINES, INC., | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, Chief District Judge, Presiding

Submitted January 6, 2020**
San Francisco, California

Before: WALLACE and FRIEDLAND, Circuit Judges, and HILLMAN,***
District Judge.

Plaintiff-Appellant Jeremiah Thede appeals from the district court's dismissal

of his First Amended Complaint. Thede sued Defendant-Appellee United Airlines,

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Timothy Hillman, United States District Judge for the District of Massachusetts, sitting by designation.

Inc. for breach of contract, negligence, assault, defamation, and malicious prosecution. He waived his negligence, assault, and defamation claims. The district court then dismissed Thede's malicious prosecution claim with prejudice and his breach of contract claim without prejudice, concluding that those claims were preempted by the Montreal Convention[1] (Convention). Thede chose not to amend his complaint, and instead requested "a judgment of dismissal without prejudice of the remaining breach of contract cause of action." The district court entered final judgment. Thede now appeals from the district court's dismissal of his malicious prosecution claim.

We have jurisdiction under 28 U.S.C. section 1291. *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1058 (9th Cir. 2011, *abrogated on other grounds by Lorenzo v. SEC*, 139 S. Ct. 1094 (2019)). Reviewing de novo, *see Narayanan v. British Airways*, 747 F.3d 1125, 1127 (9th Cir. 2014), we reverse and remand.

In interpreting the Convention, we begin with its text. *See id.* (citation omitted).[2] The Convention covers "all international carriage of persons, baggage, or

---

[1] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45.

[2] We rely on precedent interpreting the Warsaw Convention, the predecessor to the Montreal Convention, "where the equivalent provision in the Montreal Convention is substantively the same." *Narayanan*, 747 F.3d at 1127 n.2 (citations omitted).

cargo performed by aircraft for reward." Convention art. 1(1). The Convention preempts state-law claims that fall within this substantive scope. *See El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 172 (1999); *see also* Convention art. 29 ("In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention"). Accordingly, if a claim arises out of "passenger injuries occurring 'on board the aircraft or in the course of any of the operations of embarking or disembarking,'" the Convention precludes relief under state law. *Tseng*, 525 U.S. at 171–72 (quoting Convention art. 17). Otherwise, "for passenger injuries occurring before any of the operations of embarking or [after the operations of] disembarking," the Convention does not govern, and the carrier is "indisputably subject to liability under local law." *Id*. at 172 (internal quotation marks and citation omitted).

Under the Convention, "we conduct an 'assessment of the total circumstances surrounding a passenger's injuries'" to determine whether the accident[3] causing the passenger's injuries took place in the course of any of the operations of embarking

---

[3] Specifically, we ask whether "the accident itself took place . . . 'on board the aircraft or in the course of any of the operations of embarking or disembarking' because the Convention "does not state that the ultimate injury, as opposed to the relevant accident, must occur at any particular time following the accident." *Prescod v. AMR, Inc.*, 383 F.3d 861, 869 (9th Cir. 2004).

3

or disembarking. *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 873 (9th Cir. 2010), *quoting Maugnie v. Compagnie Nationale Air France*, 549 F.2d 1256, 1262 (9th Cir. 1977). We consider the spatial and temporal proximity of and the causal connection between the events giving rise to the claim and when a plaintiff was on board the aircraft or in the course of any embarking or disembarking operations. *See id.* at 873–74; *see also Lathigra v. British Airways PLC*, 41 F.3d 535, 539 (9th Cir. 1994); *Schmidkunz v. Scandinavian Airlines Sys.*, 628 F.2d 1205, 1207 (9th Cir. 1980); *Maugnie*, 549 F.2d at 1262.

Thede argues the Convention does not apply because his injury arises from the false testimony United's employees allegedly gave at his criminal trial in Belfast 10 months after he had disembarked from United's aircraft. United argues that the Convention applies because the alleged false testimony at Thede's trial cannot "meaningfully be separated" from "all that transpired during the international flight." We agree with Thede.

Our decision in *Eid* controls here. In *Eid*, the passengers asserted two separate sets of defamation claims under state law. *See id.* at 873–74. The passengers first alleged that the aircraft's crew gave formal statements to law enforcement that were knowingly or recklessly false. *See id.* at 873. We concluded that those events took place in the course of disembarking and were therefore exclusively governed by the Convention. *See id.* We explained that "the statements were made in the gate area

4

immediately adjacent to the boarding ramp, shortly after the plane landed." *Id.*

The passengers next alleged that after the aircraft was diverted and they were forced to disembark, it departed to its final destination when "a member of the crew made an in-flight announcement blaming plaintiffs for causing the diversion." *Id.* The passengers were not on board. *See id.* Nevertheless, based on the crew member's statement, the passengers sued for defamation. *See id.*

In reversing the district court's dismissal of the second defamation claim, we held that "[n]othing in the Convention suggests that it extends to lawsuits filed by former passengers for things that happen on planes long after they've disembarked." *Id.* at 874. Relying on amicus briefs submitted by two signatories to the Convention, Egypt and the United States, we endorsed the view that the "preemptive effect [of the Convention] exists only so long as the plaintiff is still on the airplane, embarking onto the plane or disembarking from the plane." *Id.* Given that the crew member's alleged defamatory statement was predicated entirely on the passengers' behavior *when they were on the aircraft*, we implicitly rejected the notion that the Convention's preemptive scope extends to all claims based on conduct that was the "but-for" result of events that occurred while the plaintiff was still on the airplane, embarking onto the plane, or disembarking from the plane. *See id.* at 873–74.

Here, Thede alleges United diverted his flight to Belfast, Northern Ireland, where armed officers boarded the plane and removed him from the plane. To the

5

extent Thede bases his malicious prosecution claim on accusations made by the captain or flight crew during the flight or to officers when they were in or near the gate once it was diverted, Thede's malicious prosecution claim is preempted by the Convention. These allegations mirror the ones in *Eid* involving statements "made in the gate area immediately adjacent to the boarding ramp, shortly after the plane landed." *Id.* at 873.

However, Thede's malicious prosecution claim is also based on events that took place during and following his ten-month confinement to house arrest while he waited for his criminal trial in Belfast. Thede alleges that United "made certain false claims about [him] . . . to the court, and to the news media, which caused him to be arrested, charged, and tried in criminal court." Thede also alleges that United "was actively involved in causing [him] to be prosecuted in a criminal proceeding." As with the post-disembarkation, in-flight announcement in *Eid*, these allegations are both spatially and temporally distinct from when Thede was "on board the aircraft or in the course of any of the operations of embarking or disembarking." Convention art. 17(1). Accordingly, Thede alleges facts that give rise to a malicious prosecution claim outside the Convention's substantive scope.

As an alternative basis for affirmance, United argues that Thede has failed to state a plausible claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In concluding that the Convention preempted Thede's malicious

6

prosecution claim, the district court did not reach this issue. We decline to do so in the first instance. *See Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014) (declining to address argument not reached by district court in the first instance on appeal).[4]

We also decline to exercise our discretion to address United's argument, raised for the first time on appeal, that the Aviation and Transportation Security Act precludes Thede's malicious prosecution claim. *See In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010).

For these reasons, the district court's dismissal of Thede's malicious prosecution claim is

**REVERSED AND REMANDED.**

---

[4] Because the district court did not address the merits of the First Amended Complaint, Thede may amend his pleading to cure deficiencies the district court identifies (if any) on the merits of his malicious prosecution claim.