**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-1707**

WE CBD, LLC; WE C MANAGE, LLC,

> Plaintiffs – Appellants,

v.

PLANET NINE PRIVATE AIR, LLC,

> Defendant – Appellee,

v.

ED CLARK; JET NORTHWEST, LLC; K&R INTERNATIONAL SERVICES; KELLY MCFALL,

> Third Party Defendants.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Frank D. Whitney, District Judge.  (3:21-cv-00352-FDW-SCR)

ARGUED:  May 9, 2024                           Decided:  July 26, 2024

Before KING, GREGORY, and RUSHING, Circuit Judges.

Affirmed by published opinion.  Judge King wrote the opinion, in which Judge Gregory and Judge Rushing joined.

**ARGUED:** William Robert Terpening, TERPENING LAW PLLC, Charlotte, North Carolina, for Appellants. Kathryn Anne Grace, WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP, McLean, Virginia, for Appellee. **ON BRIEF:** Nicole T. Melvani, WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP, McLean, Virginia, for Appellee.

———————————

KING, Circuit Judge:

Plaintiffs We CBD, LLC, and We C Manage, LLC, (the "Plaintiffs") appeal from the district court's summary judgment award in favor of defendant Planet Nine Private Air, LLC, ("Planet Nine") on the Plaintiffs' state law claims regarding the destruction of their air cargo of alleged hemp. *See We CBD, LLC v. Planet Nine Private Air, LLC*, No. 3:21-cv-00352-FDW-SCR (W.D.N.C. June 12, 2023), ECF No. 83 (the "Summary Judgment Order"). The Plaintiffs, as distributors of legal hemp, contend on appeal that the court erred in ruling that their state law claims are preempted by the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, T.I.A.S. No. 13,038 (2000), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) (the "Montreal Convention," or simply the "Convention"). As explained herein, we are also satisfied that the Montreal Convention preempts the Plaintiffs' state law claims, and therefore affirm the district court.

I.

We begin by summarizing the facts pertinent to this appeal. Because the Plaintiffs are challenging an adverse award of summary judgment, the facts, including reasonable inferences to be drawn therefrom, are recited in a light most favorable to them. *See Aleman v. City of Charlotte*, 80 F.4th 264, 270 n.1 (4th Cir. 2023).

3

A.

1.

The Plaintiffs acquire and distribute legal hemp for profit. In October 2020, they sought to transport hemp by air from Oregon to Switzerland. The Plaintiffs approached Ed Clark, a charter broker and founder of a corporate aircraft management firm named Jet Northwest, LLC. After the Plaintiffs informed Clark of their needs, Clark contacted defendant Planet Nine, which provides charter aircraft for global cargo distribution. Through Clark, Planet Nine was informed that the Plaintiffs' cargo would be legal hemp, with so-called delta-9 THC levels below 0.3 percent.[1] On November 1, 2020, Planet Nine sent a proposed quote for the trip to the Plaintiffs, which was signed and agreed to by them on November 4. That proposal established pricing for the transport — $147,000 — and stated that, on November 5, 2020, Planet Nine would begin to fly the Plaintiffs' hemp from Medford, Oregon, to Zurich, Switzerland, with a refueling stop in Charlotte, North Carolina.

Clark advised the Plaintiffs that Planet Nine would accept responsibility for completing the documentation required by United States Customs and Border Protection

---

[1] The Agriculture Improvement Act of 2018 defines "hemp" to mean "the plant Cannabis sativa L. and any part of that plant . . . whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." *See* 7 U.S.C. § 1639o(1). The term "tetrahydrocannabinol" is generally abbreviated to "THC." If the delta-9 THC levels of the substance are greater than 0.3 percent, however, it must be classified as marijuana, rather than hemp. *See* 21 U.S.C. § 802(16)(B). Although the Plaintiffs maintain that their cargo was legal hemp, Planet Nine asserts that it was destroyed by the federal authorities because it was illegal marijuana.

— a responsibility Planet Nine would normally undertake and satisfy. *See* J.A. 808, 818.[2] As pertinent here, the necessary documentation included three filings with U.S. Customs — (1) a general declaration, (2) an air cargo manifest, and (3) Electronic Export Information (commonly referred to as "EEI"). The departure date was revised to November 8, 2020 and, one day earlier, on November 7, Planet Nine submitted the general declaration for the flight. The general declaration, however, did not either list or identify any cargo that was being transported. The other two required filings — the air cargo manifest and Electronic Export Information — were never submitted to U.S. Customs.

On November 8, 2020, at an airport in Medford, Oregon, the Plaintiffs loaded more than 3,300 pounds of alleged hemp onto Planet Nine's aircraft in 93 bags, which consisted of a mix of both duffle bags and trash bags (the "Cargo"). Law enforcement officials witnessed the Cargo being loaded onto the plane, and they also saw individuals removing seats from the plane. The Cargo and seat removals were both deemed suspicious, and information in that regard was passed along to U.S. Customs authorities in Charlotte, North Carolina.

After departing Oregon, the aircraft landed at the Charlotte-Douglas International Airport in North Carolina, as scheduled. When it landed, U.S. Customs officials noticed that the Cargo was visible from the tarmac, through the plane's windows. The presence of the Cargo was unexpected, because the flight's general declaration identified no cargo, and

---

[2] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this matter.

no Electronic Export Information had been filed. The plane — along with the Cargo — was thus detained and inspected by U.S. Customs. A field test of the Cargo returned a positive result for THC — the active ingredient in marijuana. As a result, the Cargo was detained and removed from the plane for further testing.

2.

The U.S. Customs authorities tested the detained Cargo in San Fransico, California, and those tests determined that eight of nine samples had sufficiently high THC content to constitute marijuana, rather than hemp. The part of the Cargo that tested as marijuana — a little less than 2,800 pounds (the "First Batch") — was destroyed on March 17, 2021.

On March 19, 2021, the Plaintiffs initiated a lawsuit against the United States — in the Western District of North Carolina — alleging wrongful destruction of the First Batch, and seeking the return of the remaining 500 pounds of the Cargo (the "Second Batch"). In that lawsuit, the Plaintiffs alleged that U.S. Customs had improperly destroyed legal hemp, in part by failing to follow proper testing procedures. Their complaint was dismissed for lack of jurisdiction on March 31, 2022. The United States thereafter filed a forfeiture action against the Second Batch, in the Western District of North Carolina, and secured a default judgment. The Second Batch was thereafter also destroyed.

B.

1.

On July 19, 2021, the Plaintiffs filed their operative complaint in the Western District of North Carolina, naming Planet Nine as a defendant and alleging diversity jurisdiction and five North Carolina state law claims. The complaint also alleged, inter

6

alia, that Planet Nine's actions had caused the Plaintiff's "merchandise to be detained, seized, and eventually destroyed," and sought to recover, inter alia, "the loss of . . . merchandise, fees paid to Planet 9, penalties, and other costs." *See* J.A. 14. Planet Nine lodged counterclaims against the Plaintiffs — one of which sought a declaratory judgment that the Montreal Convention preempted all of the Plaintiffs' claims. Planet Nine also filed a third-party complaint alleging state law claims, and also that several charter brokers — including Clark and his company Jet Northwest — should indemnify Planet Nine for any recovery received by the Plaintiffs.[3]

After discovery, Planet Nine moved for summary judgment maintaining, inter alia, that the Plaintiffs' state law claims were preempted by the Montreal Convention. On June 12, 2023, the district court agreed and entered a partial summary judgment, i.e., the Summary Judgment Order, in Planet Nine's favor. On June 23, 2023, the Plaintiffs moved for entry of a final judgment, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, in order to expedite appellate review. A few days later, however, on June 26, 2023, Planet Nine voluntarily dismissed its counterclaims and third-party claims, without prejudice.

Shortly thereafter — in light of the stipulated dismissal resolving the claims that remained after entry of the Summary Judgment Order — the district court entered an order

---

[3] Two other parties named in Planet Nine's third-party complaint were charter broker Kelly McFall, and her company K&R International Services, LLC. They were sued for allegedly "guid[ing] Clark and [Jet Northwest] through the customs and exportation process." *See* J.A. 45.

closing the case and denying all pending motions as moot, including the Plaintiffs' motion under Rule 54(b).  *See We CBD, LLC* (June 28, 2023), ECF No. 89 (the "Dismissal Order"). The court did not, however, enter a necessary separate document setting out a judgment. *See* Fed. R. Civ. P. 58(a) ("[e]very judgment . . . must be set out in a separate document").

2.

On June 30, 2023, the Plaintiffs noted this appeal.  In that regard, however, the parties erroneously represented in their various initial appellate submissions that the Summary Judgment Order was a final order.  *See Porter v. Zook,* 803 F.3d 694, 696 (4th Cir. 2015) (clarifying that "a district court order is not 'final' until it has resolved *all* claims as to all parties").  After conducting oral argument, we thus requested supplemental briefing as to appellate jurisdiction.  With the benefit of those supplemental submissions, we are now satisfied that the Dismissal Order is a final and appealable order, and that we possess jurisdiction pursuant to 28 U.S.C. § 1291.

To briefly explain, although the district court dismissed Planet Nine's claims without prejudice, an order is final "when a district court dismisses . . . all claims without providing leave to amend," even if the dismissal is without prejudice.  *See Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022).  Additionally, the prohibition on using "voluntary dismissal as a subterfuge to manufacture jurisdiction" does not apply in these circumstances, in large part because the voluntary dismissal was by the prevailing defendant — Planet Nine — rather than by the aggrieved plaintiffs-appellants. *See Affinity Living Group, LLC v. StarStone Specialty Ins. Co.*, 959 F.3d 634, 637 (4th Cir. 2020) (alteration omitted); *see also Microsoft Corp. v. Baker*, 582 U.S. 23, 27 (2017); *Keena v.*

8

*Groupon, Inc.*, 886 F.3d 360, 362-63 (4th Cir. 2018).  Finally, the absence of a separate final judgment does not preclude our exercise of appellate jurisdiction.  *See Britt*, 45 F.4th at 794.

## II.

In conducting our de novo review of a summary judgment award, we apply the same legal standards as those applied by the district court.  *See Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020).  Under that standard, "[s]ummary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Lawson v. Union Cnty. Clerk of Ct.*, 828 F.3d 239, 247 (4th Cir. 2016) (internal quotation marks omitted).  Important here, a district court's interpretation of an international treaty ratified by the United States is also subject to de novo review.  *See United States v. Al-Hamdi*, 356 F.3d 564, 569 (4th Cir. 2004).

## III.

The central question to be resolved in this appeal is whether the Summary Judgment Order erroneously ruled that the Montreal Convention preempted all of the Plaintiffs' state law claims.  Recognizing that our interpretation of a treaty, "like the interpretation of a statute, begins with its text," we will briefly survey the applicable legal landscape before turning to the merits.  *See Medellin v. Texas*, 552 U.S. 491, 506 (2008).  Our rulings must

9

be guided by the Montreal Convention which, under the Constitution, is part of "the supreme Law of the Land." *See* U.S. Const. art. 6, cl. 2.

## A.

The Montreal Convention is a multilateral treaty negotiated and signed in 1999, and adopted by more than 130 countries, to harmonize the private international air laws and also to amend important provisions of the predecessor Warsaw Convention, which was signed in October 1929.[4]  The Montreal Convention contains seven chapters, of which Chapters I, II, and III, are relevant in this appeal.[5]

Chapter I of the Montreal Convention confirms that, like its predecessor, it has a broad scope and "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." *See* Montreal Convention, art. 1, ¶ 1.  The Convention defines "international carriage" as follows:

> [A]ny carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated either within the

---

[4] At least five of our sister circuits have recognized that "[p]recedent pertaining to the Warsaw Convention is instructive" on questions regarding the Montreal Convention, "because many provisions of the two Conventions are substantively similar." *See Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 244 (2d Cir. 2021) (collecting decisions from the First, Sixth, Ninth, and Eleventh Circuits).  We join our sister courts of appeals and also recognize that decisions relating to the Warsaw Convention are persuasive on questions regarding the Montreal Convention.

[5] The Montreal Convention is structured in 57 sequentially numbered articles, which are divided by "topic" into seven chapters.  Although every article is not specifically relevant to this appeal, Chapters I ("General Provisions"), II ("Documentation and Duties of the Parties Relating to the Carriage of Passengers, Baggage and Cargo"), and III ("Liability of the Carrier and Extent of Compensation for Damage"), are discussed and utilized herein.

> territories of two State Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State.

*Id.* at ¶ 2 (emphasis added). Chapter II is entitled "Documentation and Duties of the Parties Relating to the Carriage of Passengers, Baggage and Cargo," and contains fourteen articles. Those articles govern the relative responsibilities of a carrier — i.e., a person or company that undertakes the conveyance of cargo or people by air — and other parties to a carriage contract.

Particularly critical to this appeal is Chapter III of the Montreal Convention, which contains articles relating to the liability of air carriers and the extent of compensation a carrier can owe for damages. Included therein is Article 18, entitled "Damage to Cargo," which assigns strict liability to the carrier, in pertinent part, for the following:

> [D]amage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air.

Montreal Convention, art. 18, ¶ 1.[6] The term "carriage by air" is defined to mean "the period during which the cargo is in the charge of the carrier." *Id.* at ¶ 3. Article 18 also affords carriers several defenses to liability. Relevant here, one of these defenses allows a carrier to escape liability "to the extent it proves that the destruction, or loss of, or damage to, the cargo resulted from . . . an act of public authority carried out in connection with the entry, exit or transit of the cargo." *Id.* at ¶ 2.

---

[6] The Montreal Convention contains two other damages provisions. Article 17 contemplates carrier liability for damages sustained to passengers and baggage. *See* Montreal Convention, art. 17, ¶ 1. Article 19 outlines carrier liability for damages occasioned by delays in the carriage of passengers, baggage, or cargo. *Id.* at art. 19.

Chapter III also contains a preemption provision in its Article 29, which provides, in relevant part:

> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, *can only be brought subject to the conditions and such limits of liability as are set out in this Convention* without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights.

*See* Montreal Convention, art. 29 (emphasis added). As reflected above, the Montreal Convention provides the exclusive remedy for claims within its scope. *See Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 246 (2d Cir. 2021); *Dagi v. Delta Airlines, Inc.*, 961 F.3d 22, 27 (1st Cir. 2020); *see also El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 161 (1999) (applying the Warsaw Convention).

A critical determination in this proceeding, therefore, is whether the alleged claims fall within the substantive scope of the Montreal Convention. Although our Circuit has no controlling prior decisions outlining how to decide whether a claim falls within the substantive scope of the Montreal Convention, there is substantial guidance from our sister courts of appeals. And in determining whether a claim is within the Convention's scope and preempted, those courts have examined whether the claim "falls within one of the Montreal Convention's three damage provisions." *See Badar v. Swissport USA, Inc.*, 53 F.4th 739, 744 (2d Cir. 2022); *see also Dagi*, 961 F.3d at 27. That examination is usually an "assessment of the total circumstances" — which assesses the spatial and temporal proximity of and the causal connection between the events giving rise to the claim. *See Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 873 (9th Cir. 2010); *see also Dagi*, 961 F.3d at

33 (ruling that Montreal Convention preempted plaintiff's claims because plaintiff did not suffer "distinct injury connected to distinct events that took place outside the scope of the Convention.").

## B.

## 1.

With the foregoing principles in mind, we will address whether the district court erroneously determined that the Plaintiffs' state law claims in these proceedings were preempted by the Montreal Convention. Recognizing that the Convention cabined its scope to "international carriage," the court began its analysis by concluding that the carriage at issue was international. And the parties also agree that the Cargo was placed in "international carriage" because, even though the flight had yet to leave the United States, it had an international destination — Switzerland. *See* Montreal Convention art. 1, ¶ 2 ("International carriage" is "any carriage in which . . . the place of departure and the place of destination . . . are situated . . . within the territories of two State Parties").

Adhering to guidance from our sister circuits, the district court then examined whether the Plaintiffs' claims fell within one of the Montreal Convention's three damages provisions. And like our sister circuits, we are satisfied that the preemptive effect of the Convention requires an inquiry as to whether each alleged claim "falls within one of the Montreal Convention's three damage provisions." *See Badar*, 53 F.4th at 744; *see also Dagi*, 961 F.3d at 27.

The district court — recognizing that there is no dispute that the Plaintiffs were pursuing claims regarding destruction of the Cargo — turned specifically to Article 18 of

13

the Montreal Convention. Article 18, as recited above, requires the event causing the damage to have taken place "during the carriage by air." *See* Montreal Convention, art. 18, ¶ 1. The Summary Judgment Order ruled that the critical event was the U.S. Customs's "determination — following the Cargo's seizure and testing — that the Cargo was illegal marijuana." *See We CBD, LLC*, ECF No. 83 at 16. In support of that conclusion, the court ruled that the Plaintiffs had failed to "provide any evidence refuting [U.S. Customs's] determination that the [C]argo was illegal marijuana." *Id.* at 14.[7] Relying on the public authority defense contained in Article 18, the court also determined that the event was during the carriage by air, because it was "an act of public authority . . . related to its exportation." *Id.* at 17.

2.

On appeal, the Plaintiffs principally maintain that the court improperly identified the "event" causing damage to the Cargo, and contend that the relevant event is either Planet Nine's mishandling of the U.S. Customs documentation, or the alleged erroneous testing and destruction of the Cargo by U.S. Customs. *See* Appellant's Br. at 34-35.[8] Those

---

[7] The Plaintiffs argue that the Summary Judgment Order erred in ruling that they failed to "provide any evidence refuting [U.S. Customs's] determination that the Cargo was illegal marijuana." *See We CBD, LLC*, ECF No. 83 at 14. We need not reach or address that contention. As reflected herein, the Plaintiffs' claims are preempted by the Montreal Convention regardless of whether the Cargo was actually hemp or marijuana.

[8] The Plaintiffs label the mishandling of the U.S. Customs documentation as the "proximate cause" of the damage to the Cargo, and the U.S. Customs's testing and destruction as the "direct cause." *See* Appellant's Br. at 35. Further, the Plaintiffs maintain that the Montreal Convention is governed by a so-called "direct causation standard." *Id.* at 14. The Supreme Court, however, applied a proximate causation standard to the (Continued)

14

two events, the Plaintiffs argue, take each of their claims outside of the "carriage by air"

definition, because (1) Planet Nine filed the documentation before it possessed the Cargo,

and (2) the destruction of the Cargo occurred when it was possessed by U.S. Customs, far

away from the Charlotte-Douglas International Airport, and long after the Cargo's seizure.

Otherwise stated, the Plaintiffs assert that the relevant events took place before and after

the carriage by air — but not during the carriage by air.  As explained herein, however, we

reject each of the Plaintiffs' contentions.

a.

First, we decline to take an overly segmented approach in identifying the relevant

causal event and whether it took place during a carriage by air.  And we see the wisdom of

conducting "an assessment of the total circumstances."  *See Eid*, 621 F.3d at 873 (internal

quotation marks omitted).  Such an approach has been bolstered by the Supreme Court,

which — in applying the Warsaw Convention — eschewed an analysis that identified "the

precise factual event that caused the injury."  *See Olympic Airways v. Husain*, 540 U.S.

644, 653 (2004) (internal quotation marks omitted).  That is primarily because such an

approach "neglects the reality that there are often multiple interrelated factual events that

combine to cause any given injury," and "the very fact that multiple events will necessarily

combine and interrelate to cause any particular injury makes it difficult to define, in any

---

damages provisions in the Warsaw Convention. *See Air Fr. v. Saks*, 470 U.S. 392, 395-96 (1985).  And at least one court of appeals has done the same under the Montreal Convention. *See Moore v. Brit. Airways PLC*, 32 F.4th 110, 115 (1st Cir. 2022).  We are simply not persuaded, and will not adopt a heretofore unrecognized "direct causation standard."

15

coherent or non-question-begging way, any single event as *the* injury producing event." *Id.* (internal quotation marks omitted).

Assessing the causal chain as a whole, we are readily satisfied that the Plaintiffs' claims necessarily and inextricably arise from events that occurred during the carriage by air — namely the plane's detention in Charlotte, followed by field testing of the Cargo and its seizure at the Charlotte-Douglas Airport. As a result, the Plaintiffs' claims fall within the scope of Article 18 of the Montreal Convention.

b.

Turning to the Plaintiffs' argument that Planet Nine's alleged mishandling of the necessary U.S Customs documentation removes their claims from the scope of Article 18, that proposition disregards the fact that improperly filed documentation alone would not have resulted in their injury — i.e., destruction of the Cargo. In fact, the Plaintiffs acknowledge that any obligation of Planet Nine to properly submit the required U.S. Customs documentation was not contravened until the Cargo was in possession of Planet Nine and departing from Oregon — and therefore well within the carriage by air period. *See* Appellant's Br. at 57-60; Appellant's Reply Br. at 7. Put succinctly, for the Cargo to be seized and then destroyed by U.S. Customs, it had to be first placed in the possession of Planet Nine. Even assuming Planet Nine had an obligation to submit the U.S. Customs

16

documentation and improperly did so, the Cargo could not have been destroyed unless it was in international carriage by air.[9]

The Montreal Convention's preemptive scope would certainly reach claims with links in the causal chain occurring outside the carriage by air period. Certain events taking place prior to a flight — such as mishandled paperwork, improper maintenance of the aircraft, or negligent training of flight staff — can result in an accident or event causing damage only after an international carriage by air begins. To rule otherwise would greatly diminish the ambit of the Montreal Convention and would concomitantly "encourage artful pleading by plaintiffs seeking to opt out of the Convention's liability scheme" — a result that the Supreme Court has counseled us to avoid. *See El Al Israel Airlines*, 525 U.S. at 171 (applying Warsaw Convention).

In any event, our conclusion is supported by other provisions of the Montreal Convention. That is, several articles in Chapter II of the Convention contemplate the completion of pre-flight paperwork, including documents "necessary to meet the formalities of customs, police and similar public authorities." *See* Montreal Convention, art. 6; *see also* art. 5 ("Contents of Air Waybill or Cargo Receipt"), art. 7 ("Description of Air Waybill"), art. 9 ("Non-compliance with Documentary Requirements"), art. 10 ("Responsibility for Particulars of Documentation"). Thus, Planet Nine's alleged

---

[9] The parties dispute whether Planet Nine had an obligation to submit the relevant U.S. Customs documentation, or whether that obligation fell to the Plaintiffs. Assuming that Planet Nine had that obligation would not alter the result of this appeal.

17

mishandling of the U.S. Customs documentation was not the type of causal event that could remove claims for destruction of cargo from the preemptive effect of the Convention.

c.

We also disagree with the Plaintiffs that the destruction in San Fransico of the Cargo by U.S. Customs — which took place months after its seizure in Charlotte — can somehow remove their claims from the substantive scope of Article 18. The Plaintiffs' contention in that regard fails for at least two reasons — (1) there is a material difference between the event causing damage and the damage itself, and (2) actions by U.S. Customs were not events that can take a claim outside of Article 18's substantive scope.

First, Article 18 creates liability on the carrier "upon condition only that *the event which caused the damage* so sustained took place during the carriage by air." *See* Montreal Convention, art. 18, ¶ 1 (emphasis added). The plain language of Article 18 makes it apparent that "the event" must occur during the carriage by air — not the damage. Although we have not recognized that distinction as to Article 18 of the Montreal Convention, we did as to the Warsaw Convention's Article 17 — which governed carrier liability for damages to passengers. *See Sakaria v. Trans World Airlines*, 8 F.3d 164, 170 (4th Cir. 1993) (ruling that applicable term "'accident' refers to the cause of injury rather than the injury itself").

Several other courts, including the Supreme Court, have similarly recognized that there is a difference between the event that causes the injury, on one hand, and the injury itself, on the other. *See Air Fr. v. Saks*, 470 U.S. 392, 398 (1985) (explaining that "Article 17 [of the Warsaw Convention] refers to an accident *which caused* the passenger's injury,

18

and not to an accident which *is* the passenger's injury"); *Dagi*, 961 F.3d at 33 (ruling that false imprisonment which began on aircraft and ended after prolonged period in airport terminal was within substantive scope of Montreal Convention's Article 17); *Prescod v. AMR, Inc.*, 383 F.3d 861, 869 (9th Cir. 2004) ("The [Warsaw] Convention does not state that the ultimate injury or death, as opposed to the relevant accident, must occur at any particular time following the accident."); *Narayanan v. Brit. Airways*, 747 F.3d 1125, 1128-29 (9th Cir. 2014) (ruling that Montreal Convention's statute of limitations governs wrongful death claim for failure to provide supplemental in-flight oxygen, even if claim does not accrue until six months after flight). Thus, the fact that destruction of the Cargo occurred outside the carriage by air period does not alter our conclusion that the events causing the destruction took place during the carriage by air.

Second, an action by the public authorities is not the type of event that would usually remove claims for destruction of cargo from the scope of the Montreal Convention. Indeed, Article 18 explicitly recognizes a defense for damages resulting from "an act of public authority carried out in connection with the entry, exit or transit of the cargo." *See* Montreal Convention, art. 18, ¶ 2. The public authority defense is an acknowledgment that the substantive scope of Article 18 can cover claims where cargo was destroyed by public officials — which the Plaintiffs concede is what occurred here. Other than the requirement that the action be "in connection with the entry, exit or transit of the cargo," there is no temporal limitation to the public authority defense. In these circumstances, the scope of the Montreal Convention does not hinge on the speed of government action. And the fact

19

that U.S. Customs waited several months before destroying the Cargo in California does not alter our analysis.

At bottom, the gravamen of each of the Plaintiffs' claims for destruction of the Cargo necessarily and inextricably arises from an event — or series of events — that took place during the carriage by air. The plane's detention and the Cargo's field testing and subsequent seizure occurred in North Carolina en route to an international destination in Switzerland, which underscores the applicability of the Montreal Convention to the Plaintiffs' claims. We are thus satisfied that those state law claims are well within the preemptive scope of the Montreal Convention, and that the Summary Judgment Order in favor of Planet Nine should be sustained.

IV.

Pursuant to the foregoing, we agree with the district court and affirm the summary judgment award.

*AFFIRMED*

20